Russell G. Wheeler (RW8995)
Charny & Wheeler
9 West Market Street
Rhinebeck, New York 12572
Tel - (845) 876-7500
Fax - (845) 876-7501
rwheeler@charnywheeler.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATHLEEN MCGOVERN,<br><br>        Plaintiff,<br>    v.<br><br>THE INSTITUTE FOR FAMILY HEALTH, ERICA LUTZ, in her individual capacity, NICOLE NURSE, in her individual capacity, LISA OLDHAM, in her individual capacity, and LAURA BENTON, in her individual capacity,<br><br>                            Defendants. | Civil Action No.  1:18-cv-2010<br><br>COMPLAINT<br><br>Electronically Filed |

1.      Plaintiff Kathleen McGovern, by and through her attorneys Charny & Wheeler, brings this Complaint against Defendants and in support thereof states as follows.

NATURE OF THE ACTION

2.      This is an action for damages and other relief against defendant The Institute for Family Health (herein Corporate Defendant) under the Americans with Disabilities Act of 1990, 42 U.S.C. 12111, et seq. and amendments thereto (herein ADA), and the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. (herein Rehabilitation Act), based on: i) Corporate Defendants' unlawful termination of Plaintiff from employment because of her disability, record of disability, and/or because Defendants perceived Plaintiff as disabled, ii)  Corporate Defendant's failure to

1

accommodate Plaintiff's disability; iii) Corporate Defendants' failure to engage with Plaintiff in the interactive process and iv) Corporate Defendant's retaliation against Plaintiff for having engaged in activities protected by law in connection with her disability; and against Corporate Defendant and defendants Erica Lutz, Nicole Nurse, Lisa Oldham and Laura Benton (collectively herein Individual Defendants), under Article 15 of the New York Executive Law, based on: i) Defendants' (Corporate Defendant and Individual Defendants are collectively referred to as Defendants) unlawful termination of Plaintiff from employment because of her disability, record of disability, and/or because Defendants perceived Plaintiff as disabled, ii) Defendants' failure to accommodate Plaintiff's disability; iii) Defendants' failure to engage with Plaintiff in the interactive process and iv) Defendants' retaliation against Plaintiff for having engaged in activities protected by law in connection with her disability.

## JURISDICTION AND VENUE

3.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 in that Plaintiff's claims are brought under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, 12117 and 42 U.S.C. § 1981a and the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. This Court has supplemental jurisdiction over the state claims raised by virtue of 28 U.S.C. § 1367.

4.  Venue is proper pursuant to 28 U.S.C. § 1391(b)(1), as Corporate Defendant resides within this District and all Defendants are upon information and belief, residents of the State of New York.

## PARTIES

5.  Plaintiff Kathleen McGovern (herein Plaintiff) is an adult female residing in New Paltz, Ulster County, New York.

6. Upon information and belief, at all times relevant herein, Corporate Defendant is a not-for-profit health organization with corporate headquarters located in New York City, New York, within this District, and locations in the State of New York located in the Bronx, Manhattan and Hudson Valley.

7. Upon information and belief, at all times relevant herein, Corporate Defendant employed in excess of fifteen (15) employees.

8. Upon information belief, at all times relevant herein, Corporate Defendant received financial assistance from the government of the United States of America.

9. Upon information and belief, at all times relevant herein, defendant Erica Lutz (herein Defendant Lutz) was employed by Corporate Defendant as a manager and practice administrator at the health center operated by Corporate Defendant in New Paltz, New York.

10. Upon information and belief, at all times relevant herein, Defendant Lutz resided within the State of New York.

11. Upon information and belief, at all times relevant herein, defendant Nicole Nurse (herein Defendant Nurse) was employed by Corporate Defendant as Senior Vice President, Human Resources and Regulatory Affairs.

12. Upon information and belief, at all times relevant herein, Defendant Nurse resided within the State of New York.

13. Upon information and belief, at all times relevant herein, defendant Lisa Oldham (herein Defendant Oldham) was employed by Corporate Defendant as Vice President of Operations and Chief Nursing Officer.

14. Upon information and belief, at all times relevant herein, Defendant Oldham resided within the State of New York.

15.     Upon information and belief, at all times relevant herein, defendant Laura Benton (herein Defendant Benton) was employed by Corporate Defendant as Human Resources Generalist.

16.     Upon information and belief, at all times relevant herein, Defendant Benton resided within the State of New York.

## BACKGROUND

17.     On or about March 1, 2011, Plaintiff began employment with Corporate Defendant as a Patient Services Representative.  Since in or about 2014 and at all times relevant herein, Plaintiff was employed by Corporate Defendant in such capacity at its location in New Paltz, New York.

18.     Plaintiff's duties and responsibilities as a Patient Representative for Corporate Defendant included answering telephone calls form patients, scheduling appointments, sending prescription refill requests, communicating with providers and performing related clerical duties, including responsibilities for the location's mail.  At all times relevant herein, Plaintiff's workspace was located no less than approximately thirty (30) feet from the patient care are within Corporate Defendant's New Paltz, New York location.

19.     In or about 2013, following Plaintiff's hire, Corporate Defendant began to require its employees to, during influenza season, either wear a surgical mask during working hours or receive an influenza vaccination.

20.     Plaintiff complied with the requirement by wearing a surgical mask during work hours during influenza season until in or about March 2015.

21.     In or about March 2015, Plaintiff was diagnosed with Pressure Uticaria.

22. Pressure Uticaria is a chronic condition that causes an individual's skin to become red, swollen and painful in response to a pressure stimulus. The resulting lesions can last for up to seventy-two (72) hours.

23. Due to the severity of her Pressure Uticaria, Plaintiff was required to carry an EpiPen because her reaction to pressure stimulus can be so severe as to cause anaphylactic shock.

24. At all times relevant herein, Plaintiff's Pressure Uticaria substantially limited one or more major life activities, including her ability to perform manual tasks, sit, walk, stand, lift, bend, concentrate, care for herself, perform domestic tasks such as washing dishes, sleep and work.

25. At all times relevant herein, wearing a surgical mask would and in fact did trigger Plaintiff's Pressure Uticaria, causing her to develop painful lesions on her face.

26. In or about March 2015, Plaintiff advised Corporate Defendant of her diagnosis with Pressure Uticaria and the fact that the condition prohibited her from wearing a surgical mask.

27. In or about March 2015, Plaintiff also provided Corporate Defendant with a note from her physician requesting that Corporate Defendant accommodate Plaintiff's Pressure Uticaria by not requiring her to wear a surgical mask when not involved in direct patient care.

28. For the remainder of the 2015 influenza season, Corporate Defendant accommodated Plaintiff's disability by allowing Plaintiff to remain at her work station during work hours and excusing her from any responsibilities that would require her to enter the patient care area.

29. At no point during the 2015 influenza season did Corporate Defendant advise Plaintiff that she was not performing the essential functions of her position or that allowing her to remain at her work station during business hours and/or excusing her from any responsibilities that would require her to enter the patient care area imposed upon it an undue business hardship.

30. In or about February 2016, Corporate Defendant directed its employees by email to either produce proof of a current influenza vaccination or to begin wearing a surgical mask during work hours for the duration of the influenza season.

31. On or about February 22, 2016, Defendant Lutz advised Plaintiff that Corporate Defendant would continue to accommodate her Pressure Uticaria by allowing Plaintiff to remain at her work station during business hours and by excusing Plaintiff from any responsibilities that would require her to enter the patient care area.

32. Defendant Lutz also advised Plaintiff that Corporate Defendant had arranged for other of its employees to staff the patient check-out desk for the duration of the 2016 influenza season.

33. Corporate Defendant accommodated Plaintiff's Pressure Uticaria in this manner until on or about February 24, 2016, when Defendant Lutz instructed Plaintiff to immediately begin wearing a surgical mask or receive an influenza vaccination.

34. Defendant Lutz advised Plaintiff that her failure to do so would result in Corporate Defendant placing her on administrative leave.

35. Defendant Lutz advised Plaintiff that the decision to rescind the accommodation of Plaintiff's Pressure Uticaria was made by Defendants Nurse and Oldham on behalf of Corporate Defendant.

36. Immediately thereafter, Defendant Lutz advised Plaintiff that she did not care if Plaintiff had a note from her physician concerning her Pressure Uticaria and/or need for any associated accommodation.

37. Accordingly, because Plaintiff's Pressure Uticaria prevented her from wearing a surgical mask as directed by Corporate Defendant and because Corporate Defendant refused to, for the remainder of influenza season, allow Plaintiff to remain at her work station and away from patient care areas during business hours, excuse Plaintiff from patient care responsibilities and/or assign other employees to staff the patient check-out desk, Corporate Defendant placed Plaintiff on administrative, forcing her to draw from her accrued paid time off.

38. On or about March 1, 2016, Defendant Benton informed Plaintiff by voicemail that her continued employment with Corporate Defendant was contingent on Plaintiff either receiving the influenza vaccination or agreeing to wear a surgical mask during business hours for the duration of the 2016 influenza season.

39. Defendant Benton also advised Plaintiff that her failure to comply with the foregoing directive and report to work the following day would result her in her immediate termination by Corporate Defendant for job abandonment.

40. Plaintiff thereafter reported to Corporate Defendant's New Paltz location to meet with Defendants Benton and Lutz.

41. Plaintiff again advised the defendants that her Pressure Uticaria prevented her from wearing a surgical mask as directed but that she was willing and able to perform her job duties and responsibilities from her work station.

42. In response, Defendants Benton and Lutz mocked and sought to minimize the severity of her disability. To wit, Defendant Lutz told Plaintiff that if she were in Plaintiff's situation, she would do anything to keep her job, including "dealing with a rash on [her] face."

43. Defendant Benton also advised Plaintiff that Corporate Defendant wanted to "send a message" to its employees that it would not entertain requests to accommodate disabilities with regard to its surgical mask policy.

44. Defendant Benton and Lutz refused to permit Plaintiff to return to work without receiving a vaccination or wearing a surgical mask for the duration of the 2016 influenza season.

45. Defendants Benton and Lutz refused to discuss or to extend any other accommodation of Plaintiff's disability and directed her to comply and return to work on or before March 4, 2016 or be terminated from employment for job abandonment.

46. On or about March 4, 2016, Corporate Defendant summarily terminated Plaintiff's employment because she failed to return to work.

## EEOC AUTHORIZATION TO COMMENCE THIS ACTION

47. On or about December 16, 2016, Plaintiff filed a charge of disability discrimination and retaliation against Corporate Defendant with the Equal Employment Opportunity Commission (EEOC).

48. The EEOC issued Plaintiff a Notice of Right to Sue on or about December 1, 2017.

49. Plaintiff brings this action within ninety (90) days of the receipt of a Notice of Right to Sue.

## AS AND FOR A FIRST CAUSE OF ACTION
(ADA – Discrimination – Corporate Defendant)

50. Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth fully herein.

51. By the foregoing acts, Corporate Defendant discriminated against Plaintiff by suspending and terminating Plaintiff from employment because of her disability, her record of disability, and/or because of Corporate Defendant's perception that Plaintiff was disabled.

52. By the foregoing acts, Corporate Defendant discriminated against Plaintiff by failing to engage with Plaintiff in an interactive process to identify a reasonable accommodation that would permit her to perform the essential functions or her position and by failing to otherwise accommodate her disability.

53. By engaging in such discrimination, Corporate Defendant violated the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq.

54. As a proximate result of Corporate Defendant's discriminatory acts, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, the loss of other employment benefits and mental anguish and emotional distress in an amount to be proved at trial.

## AS AND FOR A SECOND CAUSE OF ACTION
(ADA – Retaliation – Corporate Defendant)

55. Plaintiff repeats and reiterates each and every allegation in the preceding paragraph as if set forth herein at length.

56. By the foregoing acts, Corporate Defendant retaliated against Plaintiff by suspending and terminating her employment because she engaged in activities protected by federal law related to her disability.

57. In so acting, Corporate Defendant violated the ADA.

58. As a result of Corporate Defendants' violation of the ADA, Plaintiff has suffered and continues to suffer damages., including loss of wages and benefits, emotional distress and mental anguish.

### AS AND FOR A THIRD CAUSE OF ACTION
(Rehabilitation Act – Discrimination – Corporate Defendant)

59. Plaintiff repeats and reiterates each and every allegation in the preceding paragraph as if set forth herein at length.

60. By the foregoing acts, Corporate Defendant discriminated against Plaintiff by suspending and terminating Plaintiff from employment because of her disability, her record of disability, and/or because of Corporate Defendant's perception that Plaintiff was disabled.

61. By the foregoing acts, Corporate Defendant discriminated against Plaintiff by failing to engage with Plaintiff in an interactive process to identify a reasonable accommodation that would permit her to perform the essential functions or her position and by failing to otherwise accommodate her disability.

62. In so acting, Corporate Defendant violated the Rehabilitation Act of 1973.

63. As a result of Corporate Defendant's violation of the Rehabilitation Act of 1973, Plaintiff has suffered and continues to suffer damages, including loss of wages and benefits, emotional distress and mental anguish.

### AS AND FOR A FOURTH CAUSE OF ACTION
(Rehabilitation Act – Retaliation – Corporate Defendant)

64. Plaintiff repeats and reiterates each and every allegation in the preceding paragraph as if set forth herein at length.

65. By the foregoing acts, Corporate Defendant retaliated against Plaintiff by suspending and terminating her employment because she engaged in activities protected by federal law related to her disability.

66. In so acting, Corporate Defendants violated the Rehabilitation Act of 1973.

67. As a result of Corporate Defendants' violation of the Rehabilitation Act of 1973, Plaintiff has suffered and continues to suffer damages, including loss of wages and benefits, emotional distress and mental anguish.

AS AND FOR A FIFTH CAUSE OF ACTION
(New York Executive Law – Discrimination – All Defendants)

68. Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth fully herein.

69. Individual Defendants are subject to individual liability for their discriminatory actions under New York Executive Law § 296(6).

70. By the foregoing acts, Defendants discriminated against Plaintiff by suspending and terminating Plaintiff from employment because of her disability, her record of disability, and/or because of Corporate Defendant's perception that Plaintiff was disabled.

71. By the foregoing acts, Defendants discriminated against Plaintiff by failing to engage with Plaintiff in an interactive process to identify a reasonable accommodation that would permit her to perform the essential functions or her position and by failing to otherwise accommodate her disability.

72. By engaging in such discrimination, Defendants violated the New York Executive Law §§ 292 and 296 et seq.

73. As a proximate result of Defendants' discriminatory acts, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future

11

earnings, the loss of other employment benefits and mental anguish and emotional distress in an amount to be proved at trial.

AS AND FOR A SIXTH CAUSE OF ACTION<br>(New York Executive Law – Retaliation – All Defendants)

74. Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth fully herein.

75. Individual Defendants are subject to individual liability for their retaliatory actions under New York Executive Law § 296(6).

76. Defendants retaliated against Plaintiff by suspending and terminating Plaintiff from employment because she engaged in activities protected by law relating to her disability.

77. By engaging in such retaliation, Defendants violated the New York Executive Law §§ 292 and 296 et seq.

78. As a proximate result of Defendants' retaliatory acts, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, the loss of other employment benefits and mental anguish and emotional distress in an amount to be proved at trial.

WHEREFORE, Plaintiff requests judgment:

i. Granting Plaintiff compensatory damages against Corporate Defendant for its violations of the Americans with Disabilities Act of 1990, the Rehabilitation Act and New York Executive Law;

ii. Granting Plaintiff punitive damages under the Americans with Disabilities Act and the Rehabilitation Act against Corporate Defendant for its intentional and bad faith violations of the Americans with Disabilities Act

12

      iii.      Granting Plaintiff compensatory damages against Defendants for their violations of New York Executive Law;

      iv.      Granting Plaintiff compensatory and punitive damages against Defendants for the mental anguish and emotional distress caused by Defendants' discriminatory and retaliatory actions against Plaintiff;

      vi.      Granting Plaintiff her costs, pre- and post-judgment interest, and reasonable attorney's fees; and

      vii.      Granting Plaintiff such other and further relief as seems just and proper to the Court.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial in this matter.

Dated:    Rhinebeck, New York
           March 6, 2018

/s Russell G. Wheeler
Russell G. Wheeler (RW8995)
Charny & Wheeler
9 West Market Street
Rhinebeck, New York 12572
Tel - (845) 876-7500
Fax - (845) 876-7501
rwheeler@charnywheeler.com

Attorneys for Plaintiff